# Wilkinson v. Roper.

*Bill in Equity for Redemption and Account.*

1. *Whether contract is sale or lease, purchase or tenancy.*—A contract may be so framed as to operate either as a sale or as a lease—either a purchase or a tenancy; as in *Collins v. Whigham* (58 Ala. 438), where the contract was construed as giving the option to the purchaser, in the first instance, to treat it as a purchase or as a lease, and, on his failure to express his election by the day named, it was held that the vendor might elect.

2. *Same.*—Where lands are conveyed by absolute deed, with covenants of warranty, the purchaser giving his written obligations to deliver twelve bales of cotton to the vendor, in annual installments of four bales each, and a mortgage on the land to secure their payment; a stipulation in the mortgage in these words, "And in case of failure to make the first two payments on said land, then we agree and hereby promise to pay said W. [vendor] two bales of cotton each year for the rent of said lands," does not, of itself, show that the contract was a conditional sale, dependent on the payment of the first two obligations at maturity, and, on default of such payment, operating only as a lease from year to year. But the acts and conduct of the parties under the contract, as proved by receipts given and accepted, and other writings, show that they so un-

[Wilkinson v. Roper.]

derstood and regarded it, or subsequently modified it, and that the cotton delivered was paid, not as purchase-money, but as rent.

3. *Cross-bill; when relief may be granted under, though original bill be dismissed.*—The general rule is, that when the original bill is dismissed, the cross-bill goes out with it, at least when the subject-matter of the cross-bill is simply defensive of the case made by the original bill; but, when the cross-bill sets up, as it may, additional facts relating to the same subject-matter, but not alleged in the original bill, prays for affirmative relief in reference to it, and presents a case of equitable cognizance, the dismissal of the original bill does not dispose of the cross-bill: it is the duty of the chancellor in such case, while dismissing the original bill, to grant such relief under the cross-bill as would be proper, under its averments and the proof, if it were an original bill.

4. *Same; extent of relief in this case.*—The original bill seeking an account and redemption of lands mortgaged by the complainant to the defendant, as alleged, to secure the payment of the agreed purchase-money, and failing in this aspect, because the proof showed that the contract between the parties was not a sale and conveyance, with re-conveyance by mortgage to secure the payment of the purchase-money, but was regarded and acted on by them as giving the vendor an election, on default being made in the payment of the first installments of purchase-money as stipulated, to treat it as a lease from year to year, and the payments as made on account of rent; the defendant may, under a cross-bill, have the deeds cancelled, the possession of his lands restored to him, and recover damages by way of mesne profits from the time the tenancy was repudiated, thereby placing the parties in *statu quo;* and the original bill further praying an abatement of the purchase-money, on the ground that ten acres of the land in fact belonged to him at the time the contract was made, and was included in the deed and mortgage by mutual mistake, and this allegation being sustained by the proof, the original bill may be retained for this purpose, in order that complete justice may be done between the parties.

5. *Sufficiency of conveyance in description of land.*—"Ten acres off the north-west corner of said quarter-section," when the words are used to designate a tract of land, is not an indefinite and uncertain description, but means the ten acres in the corner, lying in a square, and bounded by four equal sides; but, when the only descriptive words used are, "Ten acres, more or less, of said quarter-section," the conveyance is void for uncertainty as a muniment of title.

APPEAL from the Chancery Court of Butler.

Heard before the Hon. JNO. A. FOSTER.

The original bill in this case was filed on the 6th September, 1882, by Edward B. Roper, against W. W. Wilkinson; and sought, 1st, a redemption of lands from under a mortgage, which the complainant had executed to the defendant to secure unpaid purchase-money; 2d, an account of the alleged mortgage debt, and the several partial payments made on it; 3d, an injunction of an action at law founded on the mortgage; 4th, an abatement of the purchase-money, on the statement of the account, to the extent of the value of ten acres of the land, alleged to have been included in the deed and mortgage by mutual mistake; and, 5th, other and further relief under the general prayer. The contract between the parties was consummated on the 27th June, 1874, when Wilkinson and wife exe-

cuted and delivered to complainant a conveyance to the land, with covenants of warranty, reciting the present payment of $750 as its consideration; and complainant and his wife executed and delivered to said Wilkinson their several written obligations, each binding them to deliver to said Wilkinson or bearer, on the 1st October, 1875, 1876, and 1877, respectively, "four bales of lint-cotton, to class L. M., and to weigh 500 lbs. each, for land;" and they also executed a mortgage on the land, with power of sale, to secure the payment of these obligations, and containing an additional stipulation in these words: "And we further agree, that in case of failure to make the first two payments on said land, then we agree and hereby promise to pay the said W. W. Wilkinson two bales of cotton each year for the rent of said land." Copies of the deed, mortgage and written obligations were made exhibits to the bill. The complainant alleged in his bill that he had paid and delivered more cotton than was due under his contract, and offered to pay any balance that might be found due on the statement of the account; and he claimed an abatement of the purchase-money, on the statement of the account, on the ground that ten acres of the land embraced in the deed and mortgage belonged in fact to him at the time the contract was made, and was included in the conveyances by mutual mistake.

An answer to the bill was filed by Wilkinson, admitting the correctness of the exhibits to the bill, denying that the complainant had any right of redemption under the terms of the mortgage, and insisting that since the 13th December, 1875, default having been made in the payment and delivery of the cotton as stipulated, the complainant had been in possession of the land only as his tenant. He asked that his answer might be taken as a cross-bill, and prayed "that whatever title to said land may be vested in the said Edward B. Roper or his wife, the said R. A. T. Roper, may be devested by the decree of this court, and vested in this defendant; that an account may be had and taken of the rents due to this defendant by the said Edward B. Roper, and he be decreed to pay the amount so found due," and for other and further relief.

On final hearing, on pleadings and proof, the chancellor held the complainant entitled to relief, and ordered an account as prayed; and his decree is now assigned as error.

Jno. Gamble, and J. C. Richardson, for appellant.—The deed and mortgage are to be construed together, as parts of one and the same contract, and as evidencing the entire contract between the parties. Thus construed, the option was given to Roper, in the first instance, to treat the transaction as a conditional sale, or as creating a tenancy; and his election having

[Wilkinson v. Roper.]

been manifested, the character of the contract became fixed and irrevocable, unless changed by the mutual consent of the parties. Having elected to treat it as a tenancy, as clearly shown by the subsequent dealings between the parties, Wilkinson could not have treated it as a mortgage—could not have foreclosed it in equity, and recovered a personal decree against Roper for any balance of purchase-money unpaid. The parties had a right to make their own contracts, and a court of equity will enforce them as made.—*Collins v. Whigham*, 58 Ala. 438; *Sewall v. Henry*, 9 Ala. 30; *Peebles v. Stolla*, 57 Ala. 58; *Haynie v. Robertson*, 58 Ala. 39.

STONE, J.—*Collins v. Whigham*, 58 Ala. 438, is an authority for holding that parties may contract in reference to land, with the option of treating it as a sale, or a lease—a purchase, or a tenancy. The writing in that case fully expressed the terms of the contract. Construing it, we held that the purchaser, in the first instance, had the option of paying three bales of cotton, the first installment, and thus constituting the contract a purchase, or of paying two bales, and thereby constituting it a tenancy. Failing to express his election, by performing either of the alternative obligations on the day named, we held that the vendor was then clothed with an option to treat the transaction as a sale or lease. The writing in that case, as we have said, fully expressed the terms of the contract, and was only an obligation to make title, in the event the purchaser entitled himself to it by paying the purchase price.

The present case is very different in its facts. Wilkinson and wife conveyed the land to Roper by absolute deed, with full covenants of warranty, on the day of the contract. On the same day, Roper executed to Wilkinson his three obligations, binding himself in each to deliver to Wilkinson four bales of cotton, in all twelve bales, in installments due severally 1st October, 1875–6–7; and to secure their payment, he and his wife executed their contemporaneous mortgage on the lands, containing a power of sale on default. Up to this point, there is nothing in this case to distinguish it from an ordinary sale and conveyance of lands, with return mortgage taken to secure the purchase-money. Not a word of condition in the sale any where expressed. After the contract was made complete to this extent, the following clause was added to the mortgage: "And we further agree that, in case of failure to make the first two payments on said land, then we agree and hereby promise to pay the said W. W. Wilkinson two bales of cotton each year for the rent of said lands." Under this clause it is contended for appellant, Wilkinson, that it was only a conditional sale, dependent on the payment by Roper of the two installments

of the purchase-money first to mature; and if those two install-
ments were not paid, then there would be no sale, but only a
lease to Roper of the premises, at the agreed yearly rental of
two bales of cotton; and Roper having failed to pay the first
two installments, the contention is, that Roper has been in only
as tenant from year to year.

Viewed in the light of these writings, it would be very diffi-
cult to work a conditional sale out of this transaction. The
title was passed absolutely to Roper, by Wilkinson's deed.
True, it was mortgaged back on the same day; but, in equity,
this was only a security for the payment of the purchase-money.
As to all the world, except Wilkinson, the freehold was in Ro-
per. To vest a complete, indefeasible legal title in Wilkinson,
there must have been a foreclosure of the mortgage, a recon-
conveyance by Roper, or a release or conveyance of the equity
of redemption. Without one of these, Wilkinson had no title
that could maintain ejectment against any one except Roper, or
those holding in his right. This is certainly an unusual condi-
tion of the title, if the intention was only to make a conditional
sale, or to create a tenancy; and, to give to the words appended
to the mortgage, which we have copied above, the effect of con-
verting a solemn deed of bargain and sale, executed, acknowl-
edged and recorded, into a lease from year to year, determina-
ble at pleasure, would be to incorporate in the instrument a
stipulation which the parties have failed to express.—2 Brick.
Dig. 248, § 4. In doubtful cases, the law presumes a convey-
ance was intended as a mortgage security, rather than a sale
with a condition to re-purchase.—*McNeill v. Norsworthy*, 39
Ala. 156.

But we are not left to the deed and mortgage alone, as guides
in the interpretation of this contract. Roper failed to pay the
first two installments of four bales each, at the time of their
maturity; but he made annual payments, sometimes of two
bales, and sometimes of less. These were receipted for, some-
times as rent, and sometimes simply "on account of land,"
without expressing whether it was purchase, or rent money.
In 1876, three bales were delivered; but the excess over two
bales—1,000 lbs.—was accounted for to Roper, partly in cash,
but mainly in a credit on account. In 1877, there was no ex-
cess over two bales, except one dollar, applied to recording. In
1878, there was an excess over the two bales, of 188 lbs. This
was applied to open account. There is proof that Roper ob-
tained advances from Wilkinson. Now, all these payments,
and their application, are shown by documentary proof, testified
to by Roper himself, and made exhibits to his deposition.

But there is stronger evidence than this, testified also by
Roper, and appended to his deposition as an exhibit. Bearing

[Wilkinson v. Roper.]

date February 18th, 1878, Roper executed a written agreement in the following terms, "November 1st after date, I promise to deliver to W. W. Wilkinson, or bearer, two bales of lint-cotton, to class low-middling, and to weigh five hundred pounds each, put up in good order, and delivered in Greenville, Ala., for the rent of land; with this understanding and agreement, that if I can pay the balance purchase-money on said land, then the value of the two bales of cotton shall go to make up said payment, and be applied to part of said purchase-money, instead of rent. Also, twenty-five dollars more for rent." Signed "*E. B. Roper*," and witnessed. Recurring to the account of cotton received by Wilkinson from Roper during that year, as testified to by Roper, we find two bales cotton, weighing severally 6C4 and 584 lbs.—1188 lbs.—with this language appended: "Rec'd on a|c of land 1000 lbs.; 188 at 9c., $16.90 paid on open a|c." Signed, "*W. W. Wilkinson*." This paper bears date Sept. 24th, 1878. These papers prove conclusively that the parties understood and acted on their contract, in the sense claimed by Wilkinson; and the indefinite contract of 1874 is made certain and unmistakable by the extension contract of 1878. There being a failure on Roper's part to pay the first two installments, and also a failure of proof that he paid "the balance of the purchase-money on said land," provided for in the extension contract copied above, we feel bound to hold, that the payments made by him have been as rent, under the last clause of the mortgage, and not as purchase-money.

The complainant has failed to show a case entitling him to relief, so far as the main object of the bill is concerned. We reserve, for the present, what we have to say of the complainant's claim, that ten acres of the land in controversy belonged originally to him, and were embraced in the deed and mortgage by mutual mistake.

We have shown that the main purpose of the bill must fail, for want of proof. We will consider the question of the cross-bill, without any reference to the other and minor feature of the complainant's case; in other words, as if the original bill were dismissed. The general rule is, that when the original bill is dismissed, the cross-bill goes out with it.—*Dill v. Shahan*, 25 Ala. 694; *Con. Life Ins. Co. v. Webb*, 54 Ala. 688. This is certainly the case, when the subject-matter of the cross-bill is simply defensive of the case made by the original bill. But, when the cross-bill sets up, as it may, additional facts relating to the subject-matter, not alleged in the original bill, and prays for affirmative relief against the complainant, in a matter which is the subject of the original bill, if such cross-bill present a subject of equitable cognizance, the dis-

10

missal of the original bill does not dispose of the cross-bill.
The latter remains for disposition, as if it had been filed as an
original bill.—2 Dan. Ch. Pr., 5th Ed., 1553*, note 3. In
*Ragland v. Broadnax*, 29 Grat. 401, 420, the court, speaking
of a cross-bill and its subject matter, said : " This was so con-
nected with the matter of the original bill, as to be a proper
subject of a cross-bill, but at the same time a matter of which
the jurisdiction of the court could not be ousted, by a dismis-
sion of the original bill." So, in *Dewees v. Dewees*, 55 Miss.
315, the court said : " When the proof taken had established
the truth of her [the defendant's] statements, and the falsity
of his [the complainant's], the chancellor, properly we think,
retained the cross-bill, in order that he might afford her this
independent relief." In this case, the subject and prayer of
the cross-bill were intimately connected with the subject of
the original suit. In *Wickliffe v. Clay*, 1 Dana, 585, Clay,
the complainant, had prayed for specific performance of a
contract, and Wickliffe, by cross-bill, sought its rescission.
Clay, after evidence was taken, dismissed his bill. In a most
elaborate opinion by ROBERTSON, C. J., we find this language :
" Clay's subsequent dismission of his bill did not affect Wick-
liffe's cross-bill." See, also, Story's Eq. Pl. § 391 ; *Lowen-
stein v. Glidewell*, 7 Cen. Law Jour. 167 ; *Chicago A. W. Co.
v. Conn. Life Ins. Co.*, 57 Ill. 424 ; *Camden & A. R. R. Co.
v. Stewart*, 18 N. J. Eq. 489. In the case of *Gilman v. Selma
& N. O. Railroad Co.*, 72 Ala. 566, no relief was obtained on
the original bill, yet very important relief was granted under
the prayer of one of the cross-bills.

We need not say to what extent we approve what is said in
some of the cases from which extracts are given above. What
we approve and affirm is, that if the averments of the cross-
bill relate to, and spring out of the subject embraced in the
original bill, when such cross-bill prays affirmative relief which
is equitable in its character, and which requires a cross-bill for
its presentation, if the cause, in this condition, is submitted for
decree, then, although all relief may be denied on the original
bill, it is the duty of the chancellor to grant such relief on the
cross-bill as its averments and the proofs would justify, if they
were presented in an original bill. The dismissal of the origi-
nal bill, in such case, does not necessarily, or properly, carry
with it the cross-bill.

Recurring to the minor feature and purpose of the original
bill : When we first announced our opinion in this case, an
incongruity in the pleadings, in reference to this minor phase
of the case, eluded our attention. It has not been presented
in argument, either before or since the decision ; nor has there
been a formal application for a re-hearing. A difficulty arose

in the matter of carrying out our decree as first rendered, of which we were informed by the chancellor, and by counsel. This caused us to scrutinize the record more closely. This scrutiny disclosed the incongruity to which we have referred.

The main feature of the bill, disposed of above, was an application by the mortgagor to redeem the mortgaged premises. Roper purchased lands from Wilkinson, and received from him a conveyance, describing the lands by Government-survey numbers. Contemporaneously Roper reconveyed the same lands, by the same description, to Wilkinson, as security for the purchase-money. Among the lands thus conveyed and reconveyed was the south-west quarter of the north-west quarter of section 29, township 10, range 15 east. This, it will be observed, is a tract of forty acres—the south-west forty of the quarter-section. The original bill alleges that Wilkinson, in making the sale, represented that he owned all the lands he conveyed, and that in this he was mistaken to the amount of "ten acres of the lands off the north-west quarter" of said forty, which did not belong to said Wilkinson, he having no title or claim thereto. The bill then alleges, "that said ten acres of land did, at the time, belong to him [complainant], and that he was in possession of the same, and held good and sufficient title thereto; and that he, complainant, was also mistaken, and did not find out his error for a long time after said sale to him by Wilkinson." This charge is found in the 6th section of the bill. In the foot-note, sworn answer of the defendant is dispensed with.

The special answer to this averment of the bill is, "Defendant denies that he ever conveyed, or attempted to convey, by said deed, a copy of which is made Exhibit A to the original bill, the alleged ten acres of land off the north-west corner of the north-west quarter of section twenty-nine." Comparing the numbers, it will be seen this is no denial of the averment of the bill. The bill claims ten acres off the north-west corner of south-west quarter of north-west quarter. The denial is, that defendant did not convey, or attempt to convey, ten acres off the north-west quarter of section twenty-nine. These two statements can not relate to one and the same ten acres. So, in this part of the answer, the averment of the bill under discussion is not denied. There is, however, another clause of the answer, as follows: "And further answering, this defendant denies every other matter, cause, or thing in the said complainant's said bill of complaint contained, material or necessary for this defendant to make answer unto, and not herein and hereby well and sufficiently answered, confessed, traversed and avoided, or already denied." The answer being without oath, and only pleading, this must be treated as a

sufficient denial of the mistake in the numbers of the land, alleged in the bill. The duty was then cast on the complainant of proving the mistake averred in his bill.

Is the averment of the bill, descriptive of the ten acres alleged to have been inserted by mistake, sufficiently definite, or is the description void for uncertainty? It will be remembered, the language is, "ten acres of the land off the northwest corner," of a named sub-division. Can this land be found and located? That is the question.—*Chambers v. Ringstaff*, 69 Ala. 140 ; *Meyer Bros. v. Mitchell*, at the present term. We have made a pretty thorough search, and have found only a single adjudication on this question.—*Owing v. Morgan*, 4 Bibb (Ky.), 274. In that case, a sale had been made of one thousand acres off a five thousand acre tract, to be selected off the " side, edge or corner, as might best suit S. M." Speaking of the manner of selection, the court said : " Notwithstanding the appellants, according to the contract with Myers, had a right to elect to take the land out of any side, edge, or corner of the 5,000-acre tract, we can not suppose it to have been the understanding of the parties that the figure of the land should depend upon the whim or fancy of the person making the election ; but, whenever the side, edge or corner be designated, if a side or end, lines should be extended so far from the parallel to the side or end lines, as, by passing through the survey of 5,000 acres, would include the quantity ; and if a corner, lines should be extended equal distances so far on the side and end lines, as, by running lines at right angles therewith, would include the quantity." This rule is eminently just, for it can not be supposed that either seller or buyer comtemplated, that by the selection either tract should present a fanciful, capricious, or unique figure. We think the description given in the bill is sufficient. It calls for a quadrangle, of equal sides, extending to the north-west corner.

Complainant's averment of the mistake in the writings, and his prior ownership of the ten acres, being, as we have seen, denied, it became necessary for him to prove this averment of his bill. Notwithstanding defendant's attempted special denial of this averment is no denial at all, and notwithstanding the defendant, though examined as a witness for himself, failed to testify as to the alleged mistake ; yet, the burden rested with complainant to establish this averment. He attempted to do it. He put in evidence a deed made to him by Mosely, bearing date November 8th, 1868 ; but the description of the land in that deed is, " ten acres, more or less, of the south-west fourth of the north-west fourth of said section twenty-nine." This testimony tends to prove that Roper had a prior conveyance of about ten acres of the identical forty acres, which, in its entirety,

was afterwards conveyed by Wilkinson to him. But it does not describe or designate the ten acres thus previously conveyed to him by Mosely. It does not show it lay in the north-west corner of the forty, and, hence, does not sustain the averment of the bill. It is void for uncertainty, as a muniment of title to the ten acres claimed, but gives intimation, perhaps, that Wilkinson only owned thirty of the forty acres contained in this quarter-quarter-section. This proof, unaided, is not sufficient to entitle complainant to relief, as to this ten acres.

Roper, as a witness, was interrogated on this question. In his answer, he says, in substance, that he purchased the ten acres in the north-west corner of said forty-acre tract—the S. W. $\frac{1}{4}$ of N. W. $\frac{1}{4}$ of sec. 29—from Mosely, in 1868, went into possession of it, and remained in possession of it ever since; that he accepted a deed to said ten acres from Wilkinson, through ignorance, and did not find out the error until the spring of 1882, when it was pointed out to him by the tax-assessor. The deed from Wilkinson to Roper was made in June, 1874.

It will be borne in mind that, in its primary aspect, this was a bill by Roper to redeem lands mortgaged by him to Wilkinson, to secure payment of the purchase-money of the same land, less the ten acres, sold by Wilkinson to him. By the terms of the contract, as we have shown, the transaction was to be a purchase by Roper, if he met the installments. Failing, it was to be a tenancy, at an agreed rent. · We have further shown that the purchase failed, by Roper's failure to meet the installments of purchase-money. The controversy has thus narrowed down to one between landlord and tenant, but having incumbering titles outstanding. The relief, and only relief, Wilkinson can obtain under his cross-bill, is to have the title papers cancelled, the possession of his *own* lands restored to him, and damages by way of mesne profits for the detention of his lands, from the time Roper ceased to be his tenant rendering rent. He can recover nothing as mortgagee, for there is no subsisting contract of purchase, no purchase-money due, and therefore no debt to uphold a mortgage.—*Peeples v. Stolla,* 57 Ala. 53. Renouncing the sale, and asserting a lease—demanding and receiving rent as rent—is, under the facts of this case, the equivalent of a denial that any purchase-money is due. Hence, the cross-bill can be maintained, only as a means of having the titles cancelled, and the contracting parties placed in *statu quo*. It results from this, that Wilkinson can not claim any lands not owned by him before his contract with Roper.

Under the pleadings in this cause, and under the testimony of Roper—Wilkinson offering no testimony whatever on the

question—we feel bound to hold, that Wilkinson did not own the said ten acres of land claimed by Roper to have been inserted in the deed by mistake, and that this averment of the bill is sufficiently proved. It results, that the complainant's bill fails except as to the ten acres. As to that, complainant is entitled to relief. Only the Chancery Court has power to have Wilkinson's deed and Roper's mortgage surrendered up and cancelled. The Chancery Court has thus acquired jurisdiction of the subject-matter, and may retain it and do complete equity between the parties.—1 Brick. Dig. 639, § 5. It is, perhaps, better that that course should be pursued in this case.

It being necessary to make orders in reference to the cancellation of papers, which can be more advisedly done in the court below, we will not render a final decree. We will reverse and remand the cause, that the chancellor may proceed with it in accordance with the principles herein above declared. Should amendments, or other interlocutory orders be deemed necessary, we leave that question to the discretion of the chancellor. Let the costs of appeal be paid, two-thirds by Roper, and one-third by Wilkinson.

Reversed and remanded.