# Steiner & Sons v. Baker.

*Bill in Equity to Establish Rescission of Contract, and for Cancellation of Mortgage.*

1. *Vendor and purchaser; rescission of contract by vendor; effect on obligation of purchaser.*—A contract for the conveyance of land provided that in case of default by the purchaser in the payment of the purchase money notes, the contract should become void, and the amount theretofore paid by the purchaser should be retained by the vendor as rent. A portion of the purchase money was also secured by the purchaser's mortgage on other property. Default having been made by the purchaser in the payment of the purchase money notes, the vendor demanded possession of the property, in compliance with which demand the purchaser surrendered possession, and the vendor took charge of the property as absolute owner, renting it to the original purchaser. *Held*, that such action amounted to an avoidance of the entire contract, and a destruction of the indebtedness of the purchaser, and of the mortgage given to secure a portion of it, though it appeared, from the acts of the vendor at the time of the rescission, that his intention, resulting from an erroneous conception of his rights, was to reclaim, by reason of the purchaser's default, and under the forfeiture clauses of the contract, the land sold, in his own absolute right, and at the same time to enforce the mortgage given to secure a part of the purchase money.

APPEAL from the City Court of Decatur.

Heard before Hon. W. W. CALLAHAN, Special Judge.

The bill in this case was filed on December 17, 1891, by the appellee, J. Kate Baker, against Joseph Steiner & Sons, the appellants; and prayed that a rescission of the contract of sale entered into by the complainant with

[Steiner & Sons v. Baker.]

the defendants be established, and that the mortgage executed on certain property by the complainant be delivered up and cancelled.   The facts of the case are sufficiently stated in the opinion.

On the final submission of the cause, on the pleadings and proof, the chancellor declared that the defendants, Joseph Steiner & Sons by their acts and declarations elected to treat the contract of October 4, 1889, as rescinded, and this being true the notes and mortgage based thereon must also be treated as rescinded and void; and rendered the following decree:   "It is therefore considered, ordered, adjudged and decreed by the court that the contract for the purchase of the property known in the pleadings in this case as the 'New Decatur Property,' executed by Joseph Steiner & Sons and the complainant on October 4, 1889, is rescinded by the defendants, and it is therefore ordered adjudged and decreed by the court to be void; and the mortgage, of same date, on what is described in the pleading as the 'Flint Property,' is ordered, adjudged and decreed to have become void, and is ordered to be delivered up to the clerk and register of this court, and he is hereby ordered to enter on the margin of the records of mortgages and deeds in the office of the probate judge of Morgan county, Alabama, where the said mortgage is recorded, the following:   'Cancelled by decree of the city court of Decatur, in case of J. Kate Baker v. Joseph Steiner and Sons.' It is further ordered and adjudged and decreed by the court that the sale of said Flint property on December 16, 1891, under and by virtue of the power of sale contained in said mortgage, was void, and is declared of no effect.   It is also further ordered, adjudged and decreed by the court that the notes executed by J. Kate Baker and her husband, H. J. Baker, on October 4, 1889, and payable to the order of Joseph Steiner & Sons, in compliance with said contract executed on same date, * * * be delivered up and cancelled; and the said notes are hereby ordered, adjudged and decreed null and void. It is further ordered, adjudged and decreed by the court that all the costs in this case to be taxed by the clerk and register shall be paid by the defendants, Joseph Steiner and Sons."   The defendants prosecute the present appeal from this decree, and assign the rendition thereof as error.

[Steiner & Sons v. Baker.]

O. KYLE, for the appellants, filed a written argument in which he discussed the pleadings and evidence at length.   The main points urged in the discussion of the merits of the case, with the authorities cited in support of them, were the following:

Contracts can be rescinded by the mutual agreement of the parties; but in this case default having been made in the payment of the notes and mortgage, respondents had an election, either to waive the default, or to rescind the trade.—*Moses Bros. v. Johnson*, 88 Ala. 517; *Wilkinson v. Roper*, 74 Ala, 140; *Acker v. Bender*, 33 Ala. 230; *Wilcoxson v. Stitt*, 52 Am. Rep. 310.

What constitutes a rescission? It is said in some of the books that as a contract can only be made by the consent of all the contracting parties, it can be rescinded only by the consent of all. *Gatlin v. Wilcox*, 26 Ark. 309; 2 Parsons on Contracts (7th ed.), 678.   As a general rule, contracts can only be rescinded by the mutual consent of the parties.—Waterman on Spec. Perf. §§ 489, 593, 594.   An offer to rescind, unaccepted, does not amount to a rescission; it requires the assent of both contracting parties.—*Robinson v. Pogue*, 86 Ala. 262. A rescission of an agreement requires proof of an actual agreement to rescind.—*Rockcliffe v. Pearce*, 1 F. & F. 300; 21 Am. & Eng. Encyc. of Law, 69. Negotiations for the abandonment or rescission of a contract do not constitute a rescission, unless it was the evident intention of the parties.—*Robinson v. Page*, 3 Russ. 114; *Murray v. Harway*, 56 N. Y. 337; 21 Am. & Eng. Ency. of Law. 69; *Borum v. Garland*, 9 Ala. 454; *Gillespie v. Battle*, 15 Ala. 276.

The burden is upon the complainant to establish a rescission.—21 Am. & Eng. Ency. of Law, 96; *Manning v. Pippen*, 86 Ala. 357. Where, as in this case, it is sought to set up a rescission of a written contract by a subsequent oral agreement, or acts amounting to an agreement, the "evidence must be clear, positive, and above suspicion." *Falls v. Carpenter*, 28 Am. Dec. 592.   The recission must be evidenced by acts which leave no doubt of the intent.—*Wheedon v. Fiske*, 50 N. H. 125; *Green v. Wells*, 2 Cal. 584; *Laner v. Lee*, 42 Pa. St. 165; *Mullin v. Bloomer*, 11 Iowa, 360; *Bryant v. Isburgh*, 74 Am. Dec. 657; *Sheffield Land, I. & C. Co. v. Neill*, 87 Ala. 161; Water-

[Steiner & Sons v. Baker.]

man on Spec. Perf. § 490; Pomeroy on Contracts, 395.

An election can only be implied from plain and une-quivocal acts, under a full knowledge of all the circumstances, and of the parties' rights.—*Reaves v. Garrett*, 34 Ala. 562; *English v. Executors of English*, 3 N. J. Eq. 509; *Sanger v. Wood*, 3 N. Y. Chan. Rep. (Lawy. Ed.), 668; *Fowler v. Bowery Savings Bank*, 10 Am. St. Rep. 491. Under these authorities, if a man elected to rescind a contract, "without a full knowledge of the facts"—having been deceived,—thinking and believing that certain things would be done,—t inking certain facts existed, when they did not exist,—that then the court would hold that there had been no election to rescind.

E. W. GODBEY, *contra*.—There was a rescission of the contract. All the transactions between the parties in interest go to show that there was a rescission. The notes taken expressed on their face that they were given for the rent of a particular house in Decatur; and all the other facts and circumstances tend to show an intention on the part of Steiner & Sons to rescind the contract.—*Wilkinson v. Roper*, 74 Ala. 141; *Porter v. Vaughn*, 26 Vt. 628; *Sheard v. Welburn*, 34 N. W. Rep. 716; *White v. Buell*, 27 Pac. Rep. 19; *Snodgrass v. Parks*, 21 Pac. Rep. 429; *Castleberry v. Pierce*, 5 Stew. & Port. 156.

2. The following steps taken by defendants during the progress of this suit showed conclusively that they recognized that a rescission had taken place, though their solicitors were insisting to the contrary. 1. They cancelled an unexpired insurance policy, recognizing complainant as the owner of the property, loss payable to them only "as their interest might appear;" they took a new policy, ignoring complainant, loss payable to themselves, unqualifiedly, and conditioned to be void if they were not the absolute owners of the property. 2. The title bond required complainant to pay taxes on the New Decatur property; this obligation she had not refused to perform; the answer admits that after the demand for possession, the rental contract, and the change in the insurance, defendants, for the first time, listed this property for taxation as their own. 3. Defendants did not list the Flint property for taxation, though they had pretended to purchase at foreclosure sale. 4. They

collected rent for the New Decatur property, which they decline, by pleadings, evidence or otherwise, to treat as a proper subject for credit on what they claim are subsisting purchase money notes. 5. They offer to sell the New Decatur property as their own to any proposed purchaser. They recognize no distinction between their right to convey the property involved in this suit, and their right to dispose of property never entangled with a title bond. Before these admitted facts no denial in the pleadings can stand.—*Scabury v. Stewart,* 22 Ala 207; *Waters v. Spencer,* 22 Ala. 460; *Donaldson v. Waters,* 30 Ala. 175; *Donaldson v. Waters,* 35 Ala. 107; *Shively v. Semi-Tropic L. & W. Co.,* 33 Pac. Rep. 848; *Christy v. Arnold,* 36 Pac. Rep. 918.

HEAD, J.—On the 4th day of October, 1889, appellants, Joseph Steiner & Sons, contracted to sell to the appellee, J. Kate Baker, a house and lot in New Decatur, Ala., described in the bill, and therein designated as the New Decatur property, at the price of $3,000, one-half of which (except $30 which was paid in cash) was payable in monthly instalments of $30, with interest, for which the notes of the vendee and her husband, H. J. Baker, were duly executed. The residue of the purchase money was evidenced by two notes executed by them, each for $750; the one payable, with interest, on October 1st, 1890, and the other, October 1st, 1891. The vendors executed to the vendee their bond, reciting the contract of sale and execution of the notes, and binding themselves to make titles upon compliance by the vendee with the stipulations. Mrs. Baker then owned a piece of real estate in the town of Flint, in the same county, and it was stipulated in the bond that she should secure the payment of the two notes for $750 each, by mortgage on that property; and, accordingly, she and her husband duly executed the mortgage for that purpose, with power of sale, on default in the payment of either of the two secured notes. It was also stipulated that Mrs. Baker should keep the houses on both pieces of property insured against loss by fire, to the extent of three-fourths of their values, payable to appellants, as their interests might appear, the policies to be left with appellants; which was done as to the New Decatur house. The bond stipulated as follows: "But

in case said Baker shall fail and refuse to pay every note when due, in full, then this obligation to be void, and the entire amount paid to said Joseph Steiner & Sons shall go as rent for said house and lot. If, upon full compliance with each stipulation contained in this bond by said Baker, the said Joseph Steiner & Sons shall, by deed, alien and convey to said J. Kate Baker the land above described in fee simple, with general warranty, then this obligation to be null and void; and in case said Baker should fail to pay any of said notes, or comply with any of said conditions contained herein, then this obligation to be null and void." The contract in all its parts duly received the written assent of the vendee's husband, according to the statute. The vendee paid sixteen or seventeen of the $30 notes,—the last of which matured February or March, 1891. Some of these payments were made shortly after maturity. There was no stipulation, express or implied, for a reservation of possession by the vendors, for their security or otherwise, except the clauses of forfeiture above referred to; and the vendee went into actual possession, and remained therein, until as hereinafter disclosed.

On December 17th, 1891, Mrs. Baker filed the bill in this cause, setting up, that, by acts therein detailed, the vendors had efficaciously elected to enforce the forfeiture or rescission of the contract; and praying that the rescission be established, and the mortgage executed on the Flint property delivered up and cancelled. The answer puts the alleged forfeiture or rescission in issue, and was made a cross-bill, praying the foreclosure of the Flint mortgage, and appellants' lien on the property sold.

Within the issues presented by the pleadings, we state the following facts: In September, 1891, there had been, for several months, default in the payment of purchase money notes. On the 24th day of that month, Steiner & Sons sent all the notes which had not been paid and taken up, and the Flint mortgage, to Kyle & Skeggs, practicing attorneys at Decatur, for their attention, accompanied by a letter to the attorneys, wherein it was said: "We want our money, although the conditions of the bond have been forfeited by them; unless the money is forthcoming, proceed to take posses-

sion of the house and lot in New Decatur, Alabama, and
foreclose on the Flint property, under terms of the mort-
gage, by powers therein.    Please investigate the title to
the Flint property first.    You might notify Mr. and
Mrs. Baker, and see what they have to say.''    On the
26th of the same month, Kyle & Skeggs addressed a letter
to R. J. Baker and Mrs. J. Kate Baker, advising them
of the receipt of the papers, and saying : ''We have been
further instructed to request and demand of you immèdi-
ate   payment of the same, and, if payment is refused, to
demand possession of a lot or parcel of land known as
lot number six, block  number 37, in addition 4 to New
Decatur, Alabama, it being the property for which you
hold the bond for title of said Joseph Steiner & Sons.
You will please take notice that in and by this note we
do respectfully demand possession of said above de-
scribed property, in case payment of these notes is re-
fused by you.    We are also instructed to say to you that
unless these notes are paid we will proceed to foreclose a
a mortgage made by you to said Mess. Joseph Steiner &
Sons, on lots 23, 25 and 26, in the town of Flint, in this
county and State.    Please do us the favor to call to see
us immediately, at our office here, and see if there is any
arrangement by which we can settle these matters with-
out being forced to   take the above mentioned steps.''
At the time of this  correspondence the last of the two
$750 notes, secured by the mortgage, and several of the
$30 notes had not matured.    In response to this letter,
Mr. Baker called immediately, and much negotiations en-
sued looking to indulgence and prevention of demanded
and threatened proceedings.  He then submitted a
proposition which was embodied in a letter addressed by
Kyle & Skeggs to Steiner & Sons of September 28, as
follows : ''Decatur, Ala., Sept. 28, 1891.   Mess. Joseph
Steiner & Sons, Greenville, Ala.   Gentlemen : In refer-
ence to the claim recently sent us by you vs. J. Kate
Baker, we have seen Mr. Baker, who requested us, be-
fore taking any action in the matter to submit you the
following proposition :  They will agree to pay $500
within ten days from notice of the acceptance of this
proposition by you, and surrender the property in New
Decatur, if you will cancel the notes and mortgage.   Of
course they will also surrender bond for title.   Mr. B.
says if this proposition is accepted, he would like to

know what agreement, if any, could be made about the
return premiums for insurance on the property? If
proposition is accepted, will give possession of property
in New Decatur October 1st, and, if can agree on rent,
will rent it from you. But whether this proposition is
accepted or not, he has agreed to deliver possession of
this New Decatur property to us for you. If he should
desire to rent it, in case we have to take it from him,
what rent would you charge, beginning October 1st?
We have advised Baker and wife of, and are fully pre-
pared to carry out, your previous instructions in this
matter, if this should prove unsatisfactory. Please ad-
vise us at once. Very truly, Kyle & Skeggs.

"We have made an investigation of the title to the
property and believe the title good; there is a defective
acknowledgment of the wife of one of Baker's vendors,
but we have ascertained that at the time it was not the
homestead. Do you wish an abstract, or chain of title
to this prop rty at Flint, Alabama? Truly, Kyle &
Skeggs."

To which Steiner & Sons replied, October 3, 1891, as
follows: "Greenville, Ala., Oct. 3, 1891. Mess. Kyle &
Skeggs, Decatur. Gentlemen: Your favor of 28th ult.
noted. We don't want to take the property back from
the Bakers, and hence can't accept their proposition, that
is, provided the Flint property be worth over $500, and
on this point would like your opinion, after sending or
going to Flint to investigate. It seems they can raise
$500 so easily and quickly, we would agree to an exten-
sion of balance if they pay us the $500, without impair-
ing any of our present securi y. Please see them again,
and, after investigating value of Flint property, let us
hear from you quickly as we desire to close this up
speedily. Truly yours, Joseph Steiner & Sons."

Mr. Baker was notified of this letter, and about the
middle of October he proposed to pay $500 and as many
of the small notes as possible, if the time was extended
for twelve months. There was afterwards a requirement
that he pay the attorney's fees. After making efforts,
he could not raise the money to make the payment, and
that scheme miscarried; and about the first of November,
1891, he proposed that he and Mrs. Baker would give
up the New Decatur and Flint properties in settlement
of the debt, with privilege of redeeming the Flint prop-

[Steiner & Sons v. Baker.]

erty at the price of $750. Nothing was said about the time for redeeming. This proposition being submitted to Steiner & Sons, they declined it by their letter to Kyle & Skeggs of November 6th, as follows: "Greenville, Ala., November 6th, 1891. Mess. Kyle & Skeggs, Gentlemen: Your favor of 4th and 5th to hand to-day. We have no further propositions to submit, nor do we care to consider any more; so you will please proceed and use your quickest and surest methods. If Mr. Baker will give us $25 per month take his rent notes for the house; otherwise have him vacate. Please say to Mess. Bibb, Hoff & Co. that we would be glad to have them turn over all our papers to you that are now in hands of Mr. Bains. Respt. &c., Joseph Steiner & Sons."

During these negotiations Mr. Baker had expressed his desire and purpose, in the event no arrangement for the extension of the indebtedness could be effected, to incur no costs by legal enforcement of the rights of Steiner & Sons, and to give up the property, if demanded, without litigation; and stated that if he had to give it up, he desired to rent the New Decatur property for November and December, in order that the business of keeping a boarding house, in which they were engaged, might not be interrupted during that time. This desire was made known to Steiner and Sons before their letter of November 6th was written. Being notified of the demands of this letter, Mr. Baker called on Kyle & Skeggs on or about November, 7th, and then agreed to rent the New Decatur property for November and December. Rent notes were then prepared, dated November 1st, and he took them away to be signed by Mrs. Baker and himself, which was done, and the notes delivered to Kyle & Skeggs a day or two afterwards. The first note was paid when due, and the second partially paid, and a receipt given for the amount paid, $15., by Kyle & Skeggs, as so much paid on rent note for December. There was no agreement that this rent money should be credited on the purchase money indebtedness. It was not so credited, and no allusion was ever made to that subject, until, in the answer and cross bill, in this cause respondents offered so to credit it. Up to that point, the money was held, to all appearances, as the absolute property of Steiner & Sons, as in any other case of rent received by a landlord from his tenant.

On November 9, 1891, which was about the time of the execution of the rent notes, Mrs. Baker under the advice of counsel, addressed to Steiner & Sons, at Greenville, Ala., the following letter: "I desire to know upon what grounds you demand me to pay rent. Is it on the ground that you have elected to avoid the contract of purchase of the New Decatur property? An early reply may facilitate matters." This letter was sent to Kyle & Skeggs for reply, and on November 17th, they addressed the following letter to Mrs. Baker: "Decatur, Ala. Nov. 17, 1891. Mrs. J. Kate Baker, New Decatur, Ala. Dear Madam :—Your letter of date November 9, 1891, sent by you to Mess. Joseph Steiner & Sons, has been referred by them to us, with the request that we answer it. You ask in your said letter upon what grounds Mess. Steiner & Sons demand rent of you, and say : 'Is it on the ground that you have elected to avoid the contract of purchase of the New Decatur property?' In answer we say : Mess. Steiner & Sons have made no 'demand' that you pay rent. 2. For further answer, that you have not complied with the terms of the purchase of the New Decatur property. 3. That you have voluntarily agreed to surrender the possession of said property to Mess. Jos. Steiner & Sons, and have agreed to pay rent for the same, signing a note for the payment of said rent. 4. That a part of the consideration of this agreement to surrender possession was to save costs of suit. 5. Mess. Steiner & Sons propose to abide by the terms of the contract of purchase. Very truly yours, Kyle & Skeggs. Attorney's for Jos. Steiner & Sons. At the request of your husband, Mr. H. J. Baker, having done what he could to aid you in this matter, we hope it can be adjusted as suggested and agreed to by him for you. With much respect we are Very truly, Kyle & Skeggs, Attorney's for Jos. Steiner & Sons."

Copy of this mailed November 17th, 1891.

After the execution of the rent notes, Kyle & Skeggs, as attorneys, advertised the Flint property to be sold under the mortgage, on December 16th, 1891. Thereafter, nothing was heard from Mr. or Mrs. Baker in reference to that proceedings, until the day of sale, December 16, when the attorney of Mrs. Baker, for her, publicly forbade the sale, and gave notice of the alleged

invalidity of the mortgage, by reason of the alleged rescission. The sale proceeded, and Kyle & Skeggs bid off the property for their clients, at $500. The next day thereafter this bill was filed by Mrs. Baker. In January, 1892, Steiner & Sons procured the policy of insurance on the New Decatur property to be cancelled, and a new one issued to themselves by the same company, as absolute owners of the property; the unearned premium of the cancelled policy being credited to Mrs. Baker, who was still indebted to the company for a portion of the earned premium. They also placed the property in the hands of real estate agents, in Decatur, for rent or sale, and directed them to assess it, as their property, for taxation for 1892. From the purchase in 1889 until then it had been assessed to Mrs. Baker. These agents rented the New Decatur property for Steiner & Sons for another term, and by efforts, participated in by Steiner & Sons, endeavored to sell it.

To this point, there is no dispute in the evidence. The sole controversy of fact, material or immaterial, is in reference to what was orally said by Mr. Baker, on the one part, and Kyle & Skeggs, on the other, at the time of, and previously, in reference to, or hearing upon, the renting of the property by Mr. and Mrs. Baker in November.

The bill relies upon the undisputed facts, above stated as constituting an election by respondents to avoid the contract. The case made by the answer is, that the rent notes "were executed under the agreement made by complainant's husband and agent, H. J. Baker, to surrender the possession of both the New Decatur and Flint properties, that they might be sold by the respondents to satisfy the debt of the complainant without resort to the courts." The witnesses who speak to the oral declarations are H. J. Baker, for complainant, and Messrs Kyle & Skeggs for respondents. We will not attempt to reproduce, in terms, the testimony of these witnesses. Viewed in connection with the written correspondence, we think the following, to repeat somewhat, are fair deductions from the whole: The letter of Steiner & Sons to Kyle & Skeggs of September 24th, inclosing the claims, stated that they wanted their money, although the conditions of the bond had been forfeited by the Bakers; and instructing that, unless the

money was forthcoming, to proceed to take possession of the house and lot in New Decatur, and foreclose the mortgage on the Flint property, first investigating the title to the Flint property. This letter was shown to H. J. Baker on the 28th September by Kyle & Skeggs, and much conversation ensued. Baker was anxious to obtain indulgence or make some settlement of the matter. It was mentioned by Kyle & Skeggs that their remedy to enforce their clients' rights was by bill in chancery, and that the law gave a right of redemption within two years. Baker declared his desire that no costs be incurred, and his intention to make no resistance necessitating costs; and if indulgence could not be obtained and no settlement effected, they would surrender the property without litigation. Baker also stated that, in that event, they desired to rent the New Decatur property, to continue the business of keeping boarding house. The result of this interview was the submission to Steiner & Sons, through Kyle & Skeggs, of Baker's first proposition, hereinabove referred to, by the letter of K. & S. of that date. That letter stated : "If proposition is accepted, will give possession of property in New Decatur October 1st, and, if can agree on rent, will rent it from you. But whether this proposition is accepted or not, he has agreed to deliver possession of this New Decatur property to us for you. If he should desire to rent it, in case we have to take it from him, what rent would you charge, beginning October 1st? We have advised Baker and wife of, and are fully prepared to carry out, your previous instructions in this matter, if this should prove unsatisfactory." This letter also reported the title to the Flint property to be good. To this point, it is evident that the intention of Steiner & Sons, known and not objected to by Baker, was not only to retake possession of the New Decatur property, but also to foreclose the Flint mortgage, thus recognizing a continuance, in some sort, of the purchase money liability, though coupled, as it was, with the inconsistent contemplation of a creation of the relation of landlord and tenant between the parties as to the New Decatur property. The latter also clearly manifested that Baker's *express* promise to surrender possession related to the New Decatur property only; though, as we have said, the asserted right and purpose

[Steiner & Sons v. Baker.]

of Steiner & Sons to foreclose the Flint mortgage, as well as to retake the New Decatur property, were well understood and not objected to or questioned. The reply of Steiner & Sons to this letter, which was made known to Baker as soon as received, stated, that if the Flint property was worth over $500, they did not want to take the property back from the Bakers, and hence could not accept the proposition to surrender the property (New Decatur) and pay $500, in full settlement of the debt; and they asked the opinion of their attorneys as to the value of the Flint property. They also submitted, in the same letter, a counter proposition, to accept a payment of $500, and extend the balance (for a time not stated), without impairing any of their present securities. This was followed, as we have seen, by Baker's second proposition to pay $500 and get an extension for twelve months; and, meanwhile, to pay as many of the small notes as he could. This was assented to, with the requirement that he pay, from the $500, the fees of Kyle & Skeggs, and agree to pay at least six of the small notes during the time. Baker made sundry efforts to raise the money to carry out the arrangement, but failed. Thereafter, about November 4th, Baker's third proposition, which was to surrender both properties in full settlement of the debt, with the right to redeem the Flint property, within two years, at a valuation of $750, was submitted to Steiner & Sons, which evoked their reply of the 6th to Kyle & Skeggs, saying: "We have no further propositions to submit, nor do we care to consider any more; so you will please proceed, and use your quickest and surest methods. If Mr. Baker will give us $25 per month, take his rent notes for the house; otherwise have him vacate." Then it was, that, on or about the 9th of November, the rent notes were executed by Mr. and Mrs. Baker for $25 per month for rent for November and December. H. J. Baker testified, on cross examination, that his recollection was that, at the time the rent notes were delivered, Mr. Skeggs remarked," 'Now, I guess we had better sell the Flint property;' and I think I said, 'I guess so; that that was his job,' or something to that effect;" that unless this could be construed as an agreement, he never did agree for the Flint property to be sold. Mrs. Baker never knew of this remark, nor that the Flint property was going to be sold, until she saw it

advertised in the paper. Baker further testified that
when he delivered the rent notes, Mr. Skeggs asked, "if
I had that paper with me" (referring, presumably,
though not individualized, to the bond for titles). "I
told him I did not have it with me. I remarked to him
that we were the ones that ought to have the papers,
and we could not afford to pay rent and interest too;
and he just remarked, 'you are not paying interest.'"
"Did you ask him for the notes?" was asked Baker.
He replied, "I don't know that. I did, only in that gen-
eral way, that we are the ones that want the papers."
Skeggs testified that Baker said, "We ought to have the
papers." "I asked him what papers, and he said the
notes and mortgage. My reply to him was that he
would get the notes and mortgage when we got posses-
sion of the Flint property, and bond for titles." He
denies that he said. to Baker that they would not have
to pay rent and interest both, and that no interest
upon the debt was to be paid. He admits that Baker
said, when he delivered the rent notes, that he ought
to have the benefit of the return premium on the in-
surance policy; that they had surrendered the property
to Steiner & Sons, and ought to have the benefit of the
return premium; and that witness made no objection
to it. The various interviews and negotiations devel-
oped nothing more of material importance. Baker says
he never agreed to surrender the Flint property, while
Kyle & Skeggs say he agreed to surrender both prop-
erties. These witnesses, all, really, testify truly; for
whilst, we think, there was, at no particular time, a
specific, formal agreement, defining the terms of the
surrender, the substance of the matter was that Baker
repeatedly declared that he wanted no costs incurred,
and his purpose to make no resistance to respondents'
demands, and assured Kyle & Skeggs that he would
give up the property. He evidently expected, if treaty
for terms failed, to surrender possession of the New De-
catur property, and that the Flint property would be
sold under the mortgage. This view was shared by
Steiner & Sons and their attorneys; and an express,
formal agreement by Baker to surrender both properties
would have added nothing to its effect.

The case thus presented is a novel one. By the con-
tract of purchase, on default in payment by the vendee,

one of two courses of conduct was open to the vendors, at their election. They could treat the contract as annulled, reclaim the land, and hold all payments made thereon, as rent; or they could waive the cause of forfeiture, treat the relation of vendor and vendee as still subsisting and enforce the personal obligations of the vendee, and their securities on the lands, until the purchase money was fully realized. There was no middle, or other course, authorized by the contract. The lawful pursuit of any other would have required a new contract, modifying the existing one, executed in a mode to legally bind the parties. It is not pretended that such a new contract was entered into by these parties. The vendee, Mrs. Baker, did not even speak in the matter, much less enter into a new contract, modifying the terms of the existing one. What was said and done by her husband, and her execution of the rent notes, were admissible merely as parts of the *res gestae* of the acts of the vendors, to aid in determining whether or not they elected to avoid or preserve the contract of purchase. The acts of the vendors, then, must, necessarily, be ascribed to an exercise of one or the other of the options secured to them by the existing contract. If those acts appear to have manifested an actual intention to pursue some other course—to assert some other right which could not be legally demanded unless conferred by a new binding contract—that intention must be disregarded, and the rights of the parties determined according to the legal effect of the acts done, considered without reference to such intention. It is clear to our minds that the intention of the vendors, resulting from an erroneous conception of their rights, was to reclaim, by reason of the vendee's default, and under the forfeiture clauses of the contract, the land sold, in their own absolute right, and with the view of appropriating it to their own absolute use; and, at the same time, to enforce the Flint mortgage, given to secure a part of the purchase money. In other words, that the relation of vendor and vendee should cease, and the contract be avoided as to the land sold, but should continue as to the independent security held for the purchase money. The conduct of the vendors is susceptible of no other interpretation. There was, first, the absolute demand of possession, unaccompanied by any word or act indica-

ting that possession was required for the purpose of security; but with every act, which bore upon the question, indicating that it was demanded in absolute right, as the vendors' absolute property. There was, next, in the very surrender of the property itself, the express creation of the relation of landlord and tenant, with full rent reserved to the original vendors, as landlords, from the vendee, as tenant of the lands surrendered. It was legally impossible for the two relations, retaining all their legal incidents, to subsist, in respect of the same property, at the same time. Alternative contracts may be made by which the one relation may arise upon a defeat or cessation of the other; but the two can never be concurrent. The one existing, the creation of the other destroys it.— *Wilkinson v. Roper,* 74 Ala. 140; *Tucker v. Adams,* 52 Ala. 254, 258. There was, next, the collection of the rent and its appropriation, without credit upon the purchase money indebtedness, or the slightest manifestation of a purpose so to credit it. The offer to do so, in the amended answer, was evidently an after conception, and put forth in an effort to meet the extremity of the situation. The cancellation of the insurance policy and the taking out of a new one by the vendors, in their own names, as absolute owners; the assent of the apportionment of the premium; the renting of the property for another term; special instructions to the agents to assess the property for taxation, as that of the vendors; the efforts of the vendors to make private sale of it; the statement that the notes and mortgages would be surrendered to the vendee when vendors should get possession of the Flint property and bonds for titles—all these facts show, unmistakably, that the demand and acceptance of possession of the property sold were not for the purpose of making it available as security for a continuing purchase money indebtedness, but in the assertion of absolute ownership. Such a condition grew out of no provision of the contract, except the stipulation for forfeiture therein expressed. The contract could not be avoided in part and preserved in part, without a modification of its terms, entered into according to law. Its avoidance in part avoided it in whole. The indebtedness being destroyed, all securities, which are mere incidents to the debt and depended upon it, were likewise destroyed.

The intent and effort to preserve the mortgage security were abortive. We think there can be no doubt that the decree of the special chancellor was correct, and it must be affirmed.

Affirmed.