[Civ. No. 1354.   Third Appellate District.—May 21, 1915.]

CALIFORNIA REAL ESTATE COMPANY (a Corporation), Respondent, v. W. B. WALKUP, Appellant.

CONTRACTS—SALE OF LAND—ACTION TO RECOVER PURCHASE PRICE—INSUFFICIENT DEFENSE OF FRAUD.—A vendee under a contract for the purchase of a small tract of land, which contract binds him to pay the price in two installments at stated times, and which also provides for his employment on a commission basis to make sales for the vendor of another and larger tract of land which the vendor is authorized to sell by the owners of such tract, is not in a position to avail himself of the claim that he has been released from all liability under his contract of purchase by reason of the inability of the vendor to convey title to the latter tract in cases of sales thereof made by the vendee in small parcels, where such vendee has failed to make the payments as provided for in his contract, and it is found by the court upon sufficient evidence that no fraud was committed by the vendor in the procurement of said contract, which the vendee set up as his only defense to the action to recover such payment.

ID.—FINDINGS—CONFLICTING EVIDENCE.—A finding against the great weight and preponderance of the evidence can be maintained on the doctrine of conflict only where the alleged conflict rests upon evidence, either direct or circumstantial, which so materially contradicts the testimony on the other side, or is so radically inconsistent with it as to leave room in a fair and reasonable mind to find the fact the other way.

ID.—DEED—SUFFICIENT DESCRIPTION.—The description in a deed as "The north 1878 feet of the west 1852 feet of section 9, township 11 north, range 5 east, situated in the county of Placer, state of

California," is sufficiently definite and certain to enable the land to be identified.

ID.—VENDOR AND PURCHASER—ABILITY TO CONVEY TITLE.—The vendor under an executory contract of sale is only required to have the title to the land at the time when by the terms of the contract he is obligated to convey.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Charles Monroe, Judge presiding.

The facts are stated in the opinion of the court.

Sullivan & Sullivan and Theo. J. Roche, for Appellant.

Walton C. Webb, and Barrett & Thomas, for Respondent.

BURNETT, J.—The appeal is from the judgment and order denying the motion for a new trial in an action to recover six hundred and seventy dollars, alleged to be the balance due of the first payment under a written contract for the sale of certain real property located in Placer County. It is not disputed that the parties executed said contract, nor is it contended that anything therein contained is against public policy. It is not claimed that any element of unfairness or injustice appears upon its face and it is admitted that appellant paid to respondent the sum of fifty dollars only.

There seems to be nothing obscure in the language of said contract and its purport is easily understood. It was dated February 15, 1912, and therein appellant bound himself to pay one thousand eight hundred dollars for a certain forty-acre tract of land, to pay seven hundred and twenty dollars of this on the said fifteenth day of February and the balance on September 1, following, and to make certain enumerated improvements on said land. Appellant further agreed that respondent should act as his agent for the resale of said forty-acre tract and he promised to devote his time, attention, and ability to the sale of another eighteen hundred acre tract of land known as the Pleasant Grove Gardens.

Respondent agreed to convey said forty-acre tract to appellant, free from any encumbrance, upon the payment of said one thousand eight hundred dollars and to pay him a certain commission for any sales of said Pleasant Grove Gardens ac-

complished by him. The foregoing comprehends all the covenants of said contract and it must be manifest that the first thing to be done under the agreement was for appellant to pay said sum of seven hundred and twenty dollars which he agreed to pay on said February 15. Respondent could not be placed in default until that money was paid or tendered by appellant. That payment was the first condition to be complied with and it was the only requirement for said February 15. Appellant, however, declined to pay more than fifty dollars and we must ascertain, if we can, whether he has justified himself in his refusal to proceed further with his agreement.

It is claimed, in the first place, that "in its origin and essence the transaction here was a contract of service—rather than a contract of sale—under which Walkup, as agent, was to sell the Pleasant Grove Garden tract of 1800 acres in small subdivisions into which it had already been surveyed and platted." In this connection it is urged that the main inducement for the execution of the contract by Walkup was the prospective commissions to be earned by him in said sales and that this consideration failed by reason of the inability of respondent to convey to purchasers the title of said small subdivisions, said respondent not being the owner of said tract but being authorized only to sell it in tracts of not less than three hundred and twenty acres each. By reason of the failure of said main consideration it is claimed that appellant was released from any liability under said contract. It is to be observed, though, that nowhere is it provided in said contract that the land was to be sold in small parcels, although Mr. Walkup testified that prior to the execution of the contract he was told by Mr. Power that "we could subdivide and make sales in small subdivisions, ten, twenty, thirty, eighty or one hundred acres or whatever a man wanted." If this be considered a material circumstance, however, we must, in support of the conclusion of the lower court, accept the version of Mr. Power. He testified: "Before the execution of these contracts with Mr. Walkup, I showed him the contract of sale which we had. . . . I also showed Mr. Walkup another deed from G. A. White to myself transferring the whole of that land previous to February 15th, and also a copy of the assignment of the contract of sale between George A. White and myself to the California Real Estate Company. I showed

these papers to him the latter part of December or the first part of January, 1912. I also showed him a certified map. I think the papers and documents enumerated are all that I showed him.'' It is, therefore, a natural inference that appellant was apprised of that stipulation in the contract between White and Power providing ''that the said party of the second part may sell the said land in subdivisions of not less than a half section in each subdivision, provided that no such subdivision of a half section or more shall be sold unless the entire tract herein be sold within the time herein limited; and provided further that any such half section so sold shall be directly contiguous to some portion of said land already sold; and provided further that the first parcel to be sold in subdivisions as aforesaid shall lie at some point on the exterior boundaries of the entire tract of land.'' The map to which the witness referred, it is true, showed the tract as platted and divided into 134 small parcels by direction of Dr. White, the owner, but this, of course, could not be understood as controlling or modifying the express contract between White and Power as aforesaid. Mr. Power further testified: ''I told Walkup we were authorized to sell the entire ranch, that we would give him five or ten per cent, depending upon the conditions, for his services in helping to sell the entire ranch. I did not authorize him to sell it in 20-acre pieces or anything like that, but I told him he could sell the 364 acres which we had purchased, in whatever parcels was mutually agreed upon.''

It seems clear from the foregoing that if parol evidence is to be regarded at all to supply what it is claimed was omitted from the written contract, there is a sharp and substantial conflict as to whether any such condition contended for was agreed upon and, hence, under the familiar rule, we must resolve the point against appellant.

Moreover, appellant is in no position to avail himself of such claim. If he had made the payment as he agreed to make it, on the fifteenth day of February, and had secured a purchaser for a small parcel of said tract and respondent had been unwilling or unable to convey title to said purchaser, then appellant, upon his theory of said contract, could plausibly maintain that respondent was in default and the basis for rescission might thus have been laid. But Mr. Power testified: ''He has never made a definite request asking me

to let him sell any land.  We never resold the property.  He has never made any effort to make any sales of other land in Pleasant Grove Gardens.''  Indeed, it is not claimed by appellant that he did anything under the contract except to pay the sum of fifty dollars.  His performance of or offer to perform what he promised was a condition precedent to a legal claim of default on the part of respondent.  This would not be so if respondent declared its purpose not to carry out its agreement or if it clearly appeared that it was unable to do so, but such is not the situation.  Upon the assumption that it was agreed that appellant should sell in small parcels, we must presume that respondent would and could have kept its engagement.  We may take it for granted that, if necessary, it would have purchased of the owner the larger parcel of three hundred and twenty acres in order to accommodate the purchaser of any smaller tract.

But the foregoing discussion is probably of no vital concern as the only defense set up in appellant's answer and cross-complaint is based upon false and fraudulent representations alleged to have been made by respondent's general manager, A. F. Power, first, ''that said corporation was the owner of eighteen hundred acres of land near Pleasant Grove, in Placer County, known as Pleasant Grove Gardens, including the tract of land mentioned in plaintiff's complaint, which it desired to sell''; second, ''that said plaintiff and its said manager, A. F. Power, falsely and fraudulently represented to this defendant and cross-complainant that said forty acres of land were good and valuable and that there could be produced thereon grain, vegetables, alfalfa, fruit trees, and berries. Said false and fraudulent representations, at the time the same were made, were known by said corporation and said A. F. Power to be false and were made for the purpose of inducing said defendant and cross-complainant to enter into a contract to purchase said forty acres of land.''

The court found: ''That it is not true that on or prior to the said 15th day of February, 1912, that the said plaintiff and general manager, A. F. Power, or either of them falsely or fraudulently or at all represented to the defendant that the said corporation was the owner of eighteen hundred acres of land near Pleasant Grove, Placer County, state of California, known as Pleasant Grove Gardens, and it is true that on and prior to the 15th day of February, 1912, the said plain-

tiff owned the forty acres of land hereinbefore particularly described and represented to said defendant that said corporation was the owner of said forty acres of land.

"That it is not true that on or prior to the 15th day of February, 1912, the said plaintiff and its said manager or either of them, falsely or fraudulently represented to the defendant that the said forty acres of land was good and valuable and that there could be produced thereon grain, vegetables, alfalfa, fruit trees, and berries or any of them, but the court finds the facts to be that the plaintiff and its said manager showed to the defendant certain reports and letters which stated that land similarly situated and of like quality as the said forty acres of land, would produce vegetables, alfalfa, fruit trees, and berries, and the court finds that the representations of plaintiff and A. F. Power were not fraudulent or false and were not known by the plaintiff at that time or at any other time to be false.

The court further finds that the representations made by the plaintiff and its manager, A. F. Power, were not false or fraudulent in regard to the ownership of said land; in regard to the right of plaintiff to sell the said eighteen-hundred acre tract, as agent; in regard to what could be produced on said land or at all.''

It seems almost idle to quote the testimony in support of these findings. That it is abundantly sufficient for that purpose appears beyond peradventure. Mr. Power testified: "I know the defendant, W. B. Walkup. I saw him at our office, 14 Montgomery Street, on February 15, 1912. I had business dealings with him about that time. I first met Mr. Walkup December 12, 1911, when he called at our San Francisco offices and stated his desire to invest some money in country lands. He said his business took him around Northern California very thoroughly and he had made a study of California lands and had become satisfied that now was the opportune time to invest on account of the continued growth. I submitted some property to him, and among others, *told him of the property that I had been authorized to sell by George A. White of Sacramento,* this property being located in Pleasant Grove, Placer County, and I discussed the matter and I showed him photographs of the property. He asked me what I knew about it, and *I told him I had no personal knowledge of the subject whatever,* excepting I had gone over the property.

I then showed him a letter from the cashier of the California National Bank, stating that he thought the land was reasonably worth $125 an acre, and also speaking very nicely of the district. I also showed him a letter from the cashier of the People's Savings Bank, the largest savings bank in the Sacramento Valley. I also showed him a letter from Professor W. T. Clarke, of the University of California, College of Agriculture. Mr. Walkup read those letters." He further testified that after reading these letters Mr. Walkup said he was interested and would think the matter over and would call again; that, in the latter part of January, they went up to the property and spent the entire day going over the ranch, and Walkup became familiar with the matter; that Mr. Walkup said he was pleased with conditions and would probably buy; that he came into the office later and said he would buy the forty acres and "authorized me to draw up the papers to that effect. Mr. Walkup, during the six weeks that elapsed, visited our office several times, and had talks with reference to the selling of the lands, etc., and stated he would like to go out and sell land for us if we would pay him, and I told him we would be very glad indeed to pay him for any land he sold for us. We drew up the agreement containing the understanding that he was to buy forty acres, and we would pay him a commission on any sales he made of other lands. He signed it and we signed it and delivered it." We have hereinbefore quoted his positive denial that he told Walkup that he or the company owned the eighteen hundred-acre tract, but, on the contrary, that he showed him the selling contract with White. If Power was telling the truth, there was no misrepresentation or fraud whatever. He was flatly contradicted by appellant but the cold record does not furnish us the means of ascertaining wherein the truth lies. The decision of the question was, of course, for the trial court. We may accept as sound the rule quoted by appellant from *Houghton v. Loma Prieta Lumber Co.*, 152 Cal. 574, [93 Pac. 377], that "a finding against the great weight and preponderance of the evidence can be maintained on the doctrine of conflict only where the alleged conflict rests upon evidence, either direct or circumstantial, which so materially contradicts the testimony on the other side, or is so radically inconsistent with it as to leave room in a fair and reasonable mind to find the fact the other way"; but here it cannot be said that the find-

ing is "against the great weight and preponderance of the evidence," and, moreover, there is the positive, unequivocal and deliberate statements of a witness materially contradicting the testimony of appellant and there is certainly "room in a fair and reasonable mind" to find in accordance with the former's declarations.

The finding as to the ownership of the forty-acre tract is equally supported. Appellant's claim as to this concerns the certainty of the description contained in the deed. No one can find fault with the rule stated in 2 Devlin on Deeds, sec. 1010, that "the description of the premises conveyed must be sufficiently definite and certain to enable the land to be identified; otherwise it would be void for uncertainty." The description in the deed, dated November 24, 1911, from G. A. White to the plaintiff, is as follows: "The north 1878 feet of the west 1852 feet of section 9, township 11 north, range 5 east, situated in the county of Placer, state of California." There would seem to be no difficulty in identifying said land. The north 1878 feet of the west 1852 feet of section 9 obviously covers a strip of land in the northwest corner of said section 1878 feet long on its east and west boundary lines and 1852 feet long on its north and south boundary lines. The west 1852 feet of the section can only mean a strip of land of a uniform width extending along the whole west side of the section and the north 1878 feet of such strip is the portion of said strip between the northerly line of the section and a line drawn parallel thereto and 1878 feet south thereof.

In *Jenkins* v. *Sharpf,* 27 Wis. 472, the court held that the description in a tax deed, as "the north 20 feet of lot 1" was sufficient and that it covered a strip of land 20 feet wide along the whole northerly line of the lot.

In *Wilkinson* v. *Roper,* 74 Ala. 140, it was held that a description reading, "ten acres off the northwest corner of said quarter section" was not an indefinite description but included ten acres in the corner, lying in a square and bounded by four equal sides.

The description here is much less uncertain than in either of said cases. In fact, we can perceive no uncertainty in the terms used nor can we imagine any difficulty in locating the land on the ground.

For another reason, also, stated by respondent, is appellant in no position to raise this question. Respondent was bound

to convey the property only on September 1, 1912, the date of the final payment. It had until that time to acquire title to it. The case is within the general rule that the vendor is only required to have the title when he is obligated to convey. It is dissimilar to *Prentice* v. *Erskine*, 164 Cal. 446, [129 Pac. 585], where there was an incurable defect in the title. In such instance, of course, the vendee is not compelled to wait until some date in the future that can possibly reveal no change in the situation, but he may rescind promptly.

We may reiterate that the admitted facts as to the execution of said contract between plaintiff and defendant and the failure of defendant to make payment as provided, together with the findings of the court upon sufficient evidence against the fraud set up as the only defense of defendant, necessarily required a judgment in favor of plaintiff, and rendered entirely immaterial certain other considerations to which appellant has adverted. Among these is the contention that plaintiff's denial "of the material allegations of paragraphs VI and VIII of defendant's cross-complaint" amounts to nothing and that the court should have made a finding as to these paragraphs. The denial was certainly insufficient. (*Holt* v. *Collins*, 154 Cal. 265, [97 Pac. 516].) However, appellant at the trial should have called attention to the defect that it might be corrected. On the contrary, the case was tried upon the theory of the legal sufficiency of said denials. But the point is of no vital importance. Both of these paragraphs are inseparably connected with previous allegations as to false representations and they aver the inducing influence of these representations in the execution of the contract. The court, however, having found that no false representations were made and that the only representation made by respondent,—namely, that it was the owner of the forty-acre tract of land, was true, it is apparent that the allegations of said paragraphs VI and VIII become entirely unimportant. Necessarily, defendant could not have been influenced by representations that were *not* made and whether appellant was or was not induced to enter into the contract by reason of a *true* statement made by respondent could not, of course, affect the latter's rights under said contract.

What has been said seems a sufficient answer to the additional contention of appellant that the evidence is insufficient to support the finding as to rescission. Whether he acted

promptly or not is of no moment in view of the position taken by the court as to the alleged misrepresentations.

We think there is no sufficient reason for disturbing the judgment and order of the lower court and they are affirmed.

Chipman, P. J., and Hart, J., concurred.